IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUINTEZ TALLEY, | ) |
|     Plaintiff, | ) Civil Action No. 2: 16-cv-00152 |
| v. | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| C/O R. KING, and C/O ORBASH, | ) |
|     Defendants. | ) |

### MEMORANDUM OPINION[1]

Presently pending is the partial motion for summary judgment filed by Defendants. (ECF No. 23.) The issues have been fully briefed and the factual record has also been thoroughly developed. (ECF Nos. 24, 25, 26, 33, 34, 35, 36, and 37). The motion is ripe for disposition. For the reasons that follow, the motion will be granted in part and denied in part.

### Background[2]

Quintez Talley ("Talley") is a state prisoner currently confined at SCI-Graterford. He alleges that while incarcerated at SCI-Greene, Defendant Corrections Officer King used excessive force against him and Defendant Corrections Officer Orbash failed to protect him. Defendants do not seek summary judgment on these two claims. Talley also asserts claims for

---

[1] The parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 38 and 46.

[2] The facts are construed in the light most favorable to Talley, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

due process, equal protection, racial discrimination, retaliation, assault and battery, and mental harm.³ Defendants seek summary judgment on these claims.

On the morning of September 16, 2015, Defendants, Corrections Officers Robert King ("King") and Robert Orbash ("Orbash"), were distributing breakfast trays in the SCI-Greene Restricted Housing Unit ("RHU"). They did not give inmate, Patrick Davis, a breakfast tray.

After Orbash gave Talley his food try, Talley took his "food slot hostage" by sticking his arm out the food aperture. At that point, King repeatedly slammed the wicket on Talley's arm while yelling racial epithets at him. According to Talley, Orbash saw the whole thing but failed to intervene.

According to Defendants, after the incident with Talley, they continued to feed the prisoners on the pod. As they were exiting the pod, Talley attempted to strike King with the tray lid and his fists. Talley also allegedly threw food at King, spat at him, threw coffee and other drink items at him, and several minutes later, Talley threw material outside of his cell door and set the material on fire.

Talley was issued two misconduct reports as a result of the incident with King: (1) Charge B561610 for assault and other infractions for assaulting King; and (2) Charge B561613 for arson. Both misconducts were dismissed without prejudice due to procedural problems and were not refiled.

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine

---

³ Talley withdrew his state claims for defamation of character, intentional infliction of emotional distress, and mental anguish in his amended complaint. (ECF No. 10 at ¶ 69).

2

the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of providing elements essential to his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Liberty Lobby*, 477 U.S. at 251–52). "After making all reasonable inferences in the nonmoving party's favor, there is a

genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex*, 477 U.S. at 322; *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989) (non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment).

## Discussion

*1.     Federal Claims Under 42 U.S.C. § 1983*

A plaintiff "must [show] a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law" to establish a viable Section 1983 claim. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008), *superseded on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Talley's federal claims are against Defendants only in their individual capacities.[4]

a.     <u>Due Process Claim</u>[5]

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. Thus, to establish a claim under the Due Process Clause, Tally must show that he had a protected liberty

---

[4]     Talley withdrew his official-capacity claims against the Defendants in his amended complaint. (ECF No. 10 at ¶ 57).

[5]     In his opposition brief, Talley did not address this claim.

or property interest of which he was deprived, and that the process afforded him did not comport with constitutional requirements. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). Due process protection only applies when a prisoner is subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

Talley claims that his due process rights were violated when Officer King filed a "fabricated" misconduct report against him. The summary judgment record demonstrates that Talley was already committed to the RHU when the misconduct report was issued, and that the misconduct was dismissed without prejudice and was not refiled. Because no disciplinary proceeding occurred which resulted in sanctions against Talley, he has not articulated a sufficient liberty interest to trigger a valid due process claim. *See Sandin v. Connor*, 515 U.S. 472 (1995); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002); *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997). Summary judgment will be granted on this issue as Talley's due process claim fails as a matter of law.

b. <u>Equal Protection Claim</u>

Talley alleges that his equal protection rights were violated because prisoners similarly situated to him would not have had their arms slammed in the food aperture.

The Fourteenth Amendment Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause requires that "[a]ll persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

In this case, Talley alleges that he was treated differently because he is African American.[6] As race is a suspect class, strict scrutiny is applied such that any racial classifications must be narrowly tailored measures that further compelling governmental interests. *Johnson v. California,* 543 U.S. 499, 505 (2005). However, even when a suspect class is involved, there is no denial of equal protection unless the person was treated differently because of his or her class. *City of Cleburne,* 473 U.S. at 349.

The summary judgment record evidence, even when viewed in a light most favorable to Talley, is not sufficient to survive summary judgment. Talley has not demonstrated that non-black prisoners who dangle an arm outside of a cell are treated any differently than he was. Therefore, summary judgment will be granted to Defendants on Talley's equal protection claim.[7]

c. Retaliation Claim

Talley alleges that the assault misconduct issued by King was a retaliatory discipline to retaliate against him and to cover up King's "hate crime." To establish a claim for retaliation, Talley must demonstrate: "(1) his conduct was constitutionally protected; (2) he suffered an

---

[6] In his response to the motion for summary judgment, Talley also argues, for the first time, that "he was trying to set forth an equal protection" claim under a class of one. . . ." P's Br at 10 n. 22 (ECF o. 33). There are two problems with this argument. First, the time to raise a new claim has long passed. Discovery has closed in this matter and Talley never requested leave to amend his complaint to reflect that his equal protection claim was a "class of one" claim. Moreover, Talley's argument is without merit for an even more compelling reason: he cannot establish the elements necessary for a class-of-one equal protection claim. Our circuit has "little jurisprudence discussing this 'class of one' theory, " but "it is clear that, at the very least, to state such a claim under [this] theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated; (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment." *Phillips v. City of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Thus, even under a class of one theory, Talley still must demonstrate that he was treated differently from others similarly situated.

[7] Talley agrees with Defendants that "claims of racial discrimination by prisoners fall under" the Equal Protection Clause. (ECF No. 33 at p. 11 n.27). Thus, his racial discrimination claim will share the fate of his Equal Protection Clause claim—summary judgment will be granted to Defendants on this claim.

6

adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). After a prisoner proves his *prima facie* retaliation case, if prison officials establish that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest," they will prevail at summary judgment. *Id.* (citing *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)).

Here, the summary judgment record is void of any evidence reflecting that Talley engaged in constitutionally protected conduct. Verbal complaining about the treatment received by another inmate does constitute constitutionally protected conduct. Additionally, Talley suffered no adverse action, as the misconduct was dismissed without prejudice and was never refiled. A dismissed prison misconduct is not an adverse action as a matter of law. *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011). Therefore, Talley cannot meet the elements to prove his *prima facie* case and summary judgment will be granted to Defendants on this claim.[8]

   2.   *State Law Claims*

Assault and battery is a state law intentional tort and Plaintiff's "mental harm" claim is construed by the Court to be intentional infliction of emotional distress,[9] another state law intentional tort. Defendants contend that they are entitled to sovereign immunity on both of these claims.

---

[8] Tally argues that his retaliatory discipline claim should be analyzed under the Eighth Amendment, rather than the First Amendment. Talley provides no support for this argument and the Court is not aware of any case law that instructs that a retaliation claim should not be analyzed under the First Amendment. Even assuming that this claim is more akin to an excessive punishment claim under an Eighth Amendment cruel and unusual punishment analysis, summary judgment would still be granted to Defendants because the misconduct was dismissed and Talley was issued no punishment or sanction as a result of the misconduct.

[9] Talley argues that a "mental harm" tort is distinct from intentional infliction of emotional distress. The Court finds no merit to this argument.

Statutory sovereign immunity bars suits against "Commonwealth employees in both their official and individual capacities, so long as the employees are acting with[in] the scope of their duties." *Brautigam v. Farley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010) (internal citations omitted); *see also* 1 Pa.C.S. § 2310. "Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by employer." *Mitchell v. Luckenbill,* 680 F. Supp. 2d 672, 682 (M.D.Pa. 2010). Thus, if a Commonwealth employee is acting within the scope of his or her employment when the employee commits a tort, the employee is not amenable to suit unless one of the nine enumerated exceptions to the statutory grant of sovereign immunity applies. *See* 42 Pa.C.S. § 8522(b). This is true whether the tort is committed negligently or intentionally. *See Mitchell*, 680 F.Supp.2d at 682 ("[W]illful misconduct does not vitiate a Commonwealth employee's immunity if the employee is acting within the scope of his employment . . . .").

It is uncontested that none of the nine enumerated exceptions to the statutory grant of sovereign immunity apply in this case  Therefore, for Talley's state law claims to be viable, the evidence must show that Defendants acted outside the scope of their employment.

    A.    *Assault and Battery*

Talley alleges that King committed an assault and battery against him when King "intentionally slamm[ed] his arm in the food slot & doing it with the intent to hurt Plaintiff." Complaint at ¶ 30 (ECF No. 1-1). He further alleges that Orbash should be held liable for King's behavior because he failed to intervene.

An assault occurs when (a) an actor "'intend[s] to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in immediate apprehension.'" *Renk v. City of Pittsburgh*, 641 A.2d 289, 294–95 (Pa. 1994) (quoting Restatement (Second) of Torts § 21(1) (1965)). "'[A] battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 641 A.2d at 293 (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).

Pennsylvania courts have recognized that "an assault committed by an employee upon another person for personal reasons or <u>in an outrageous manner</u> is not actuated by an intent to perform the business of the employer and, as such, is not within the scope of employment." *Zion v. Nassan*, 28 F.R.D. 247, 267 (W.D.Pa. 2012) (quoting *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998) (emphasis added).

After reviewing the summary judgment record and construing it in the light most favorable to Talley, the Court finds that a reasonable jury could find that King acted outside the scope of his employment during his altercation with Talley on September 16, 2015. King repeatedly slammed Talley's extended arm into the cell door for ten to thirty seconds. While King slammed Talley's arm, he used racial epithets and physical threats. Therefore, summary judgment will be denied on Talley's claims for assault and battery against King.

In contrast, the summary judgment record evidence does not demonstrate that Orbash acted outside the scope of his employment when he allegedly failed to intervene. Therefore, summary judgment will be granted on Talley's claims for assault and battery against Orbash.

b. <u>Mental Harm (Intentional Infliction of Emotional Distress)</u>

Talley alleges that he was suffered "mental harm" from King's assault and battery and Orbash's failure to intervene. Supplemental/ Amended Complaint, at ¶ 74 (ECF No. 10).

Talley's claim for mental harm, is construed as a claim for intentional infliction of emotional distress, does not survive summary judgment. For an intentional infliction of emotional distress claim to be viable under Pennsylvania law, "existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Mem'l Park,* 527 A.2d 988, 995 (Pa. 1987). Talley has not produced any medical evidence which supports his claim that he suffered emotional distress due to the conduct of King and/or Orbash. Therefore, summary judgment will be granted on Talley's state claim for intentional infliction of emotional distress.

### 3. *Talley's Attempt to Move for Summary Judgment*

In his brief in opposition, Talley seeks summary judgment on his Eighth Amendment claims. (ECF No. 33 at 5). The deadline for filing summary judgment motions was December 12, 2016. (ECF No. 22). Talley has not filed a motion for summary judgment, but rather seeks such relief in his opposition to Defendants' partial motion for summary judgment. But more importantly, the summary judgment record reflects that genuine issues of material fact exist on Talley's excessive force claim against King and his failure to protect claim against Orbash. Accordingly, Talley's request will be denied.

## Conclusion

Based on the foregoing, Defendants' partial motion for summary judgment (ECF No. 23) will be granted in part and denied in part. Summary judgment will be granted on Talley's federal claims of violations of due process, equal protection, racial discrimination, and retaliation. Summary judgment will also be granted on Talley's state law claims of intentional infliction of emotional distress and on his assault and battery claim against Orbash, only.

In sum, the remaining claims in this case are Talley's federal claims of excessive force against King and his failure to protect against Orbash, and his state law claim of assault and battery against King.


Dated: May 18, 2017

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge


cc: Quintez Talley
KT 5091
SCI Graterford
P.O. Box 244
Graterford, PA 19426-0244
(via U.S. First Class Mail)

Timothy Mazzocca
Office of Attorney General
(via ECF electronic notification)