# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUINTEZ TALLEY, | ) |
| Plaintiff, | ) Civil Action No. 2: 16-cv-00152 |
| v. | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| C/O R. KING, and C/O ORBASH, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

### I. INTRODUCTION

Presently pending is Plaintiff's Motion for New Trial. (ECF No. 115). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion is denied.

### II. BACKGROUND[2]

Because the facts of the case are well known by the parties, the court will only recount the facts necessary for the disposition of the present motion. Plaintiff Quintez Talley ("Talley"), proceeding *pro se*, is a state prisoner currently confined at SCI-Graterford. He alleges that while incarcerated at SCI-Greene, Defendant Corrections Officer King used excessive force against him and Defendant Corrections Officer Orbash failed to protect him. Talley also asserted claims for due process, equal protection, racial discrimination, retaliation, assault and battery, and mental

---

[1] The parties consented to jurisdiction by the undersigned Magistrate Judge. *See* ECF Nos. 38 and 46.

1

harm.[3] The court granted in part and denied in part the partial motion for summary judgment filed by Defendants.[4] (ECF No. 47).

The Plaintiff testified that on the morning of September 16, 2015, Defendants, Corrections Officers Robert King ("King") and Robert Orbash ("Orbash"), were distributing breakfast trays in the SCI-Greene Restricted Housing Unit ("RHU"). They did not give inmate, Patrick Davis, a breakfast tray. After Orbash gave Talley his food tray, Talley took his "food slot hostage" by sticking his arm out the food aperture. At that point, King repeatedly slammed the wicket on Talley's arm while yelling racial epithets at him. According to Talley, Orbash saw the whole thing but failed to intervene.

Defendants testified that they did not serve a tray to Davis because he failed to show himself in his cell window at meal time. They also testified that after the incident with Talley, they continued to feed the prisoners on the pod. King testified that as he was exiting the pod, Talley's arms were still outside his food aperture and that as he walked by Talley's cell, Talley grabbed him at his waist/belt and attempted to strike him. King gave Talley an oral command to remove his arms from the aperture. King testified that he shut the aperture on Talley's arm several times, in self-defense, in an attempt to free himself from Talley's grasp. He also testified that Talley threw food and coffee and other drink items out of the aperture. Much of the incident was captured on a video that was entered into evidence by both parties and shown to the jury several times as witnesses narrated their version of events. While the video showed the Defendants

---

[3] Talley withdrew his state claims for defamation of character, intentional infliction of emotional distress, and mental anguish in his amended complaint. (ECF No. 10 at ¶ 69).

[4] The Court granted summary judgment in the Defendants' favor on Talley's federal claims of violations of due process, equal protection, racial discrimination, and retaliation, as well as his state law claims of intentional infliction of emotional distress and assault and battery claims against Orbash.

2

movements around the pod, the camera was not directly aimed at Talley's cell and the confrontation was not captured on the video. The end of the video also depicted Talley throwing material outside of his aperture and setting the material on fire; however, this portion of the video was ordered redacted by the court and was not shown to the jury.

Both parties entered another video into evidence showing the Plaintiff in medical triage after the incident. (Plaintiff's Exhibit 2 and Defendants' Exhibit B). The court previewed the video and suggested at the preliminary conference that the strip search of the Plaintiff following the medical examination be redacted from the medical triage video before presenting the video to the jury. All parties agreed and no further redactions were requested from the video. Defendants presented the testimony of RN McAnany, who conducted the medical examination, as well as the Medical Incident/Injury Report and photographs of Plaintiff's injuries. (Defendants' Exhibit D and F). The Report notes that Plaintiff had "superficial abrasions to left elbow; superficial abrasions to right forearm; inmate verbally denied any further injury. . . No treatment necessary." *Id*.

On October 17, 2017, following the conclusion of a two-day jury trial, the jury returned a verdict for Defendants and, thus necessarily found that Plaintiff had not proven by a preponderance of the evidence that Defendants King used excessive force against Plaintiff on September 16, 2017, in violation of the Eighth Amendment of the United States Constitution, nor did he prove that Defendant Orbash failed to intervene to prevent the use of excessive force against Plaintiff on that date. Further, the jury found that Defendant King was acting within the scope of his employment as a corrections officer at SCI-Green at the time of the incident with Plaintiff, and he was therefore entitled to qualified immunity as to Plaintiff's tort claims. (ECF No. 110.)

Plaintiff contends that a new trial is warranted for the following alleged errors:

3

A. Defendants were allowed to testify regarding their prior military service;

B. Defendants' testimony regarding the Department of Correction's excessive force policy;

C. Plaintiff's statements regarding his mental health in a video which was admitted into evidence on request of both parties;

D. Defendant Orbash's rebuttal testimony regarding whether Plaintiff's witness Davis could see Plaintiff's cell from his cell;

E. The court's ruling sustaining Defendants objection to testimony regarding various forms of restrictive housing;

F. The admission of Plaintiff's Exhibit 3 without certain redactions;

G. The court's instruction to the jury on the affirmative defense of sovereign immunity to Plaintiff's assault and battery claim against Defendant King; and

H. The court's ruling that the testimony of Plaintiff's proposed witness Tonio Rosario was cumulative.

Finally, Plaintiff requests permission to file a supplement to the present motion in the event the court does not grant a new trial.

### III. STANDARD OF REVIEW

The decision to grant a new trial is committed to the sound discretion of the district court. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940); *U.S. v. Schiffer*, 836 F. Supp. 1164, 1169 (E.D. Pa. 1993), *aff'd,* 31 F.3d 1175 (3d Cir. 1994). Pursuant to Rule 59, a motion for a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Such reasons include prejudicial erroneous judicial rulings or misconduct by opposing counsel. *Olefins Trading, Inc. v. Han Yang Chem*

*Corp.*, 9 F.3d 282, 289-90 (3d Cir. 1993); *Schiffer*, 836 F. Supp. at 1169.  In such cases, the court must assess whether an error was, in fact, committed, and whether the error was so prejudicial that denying a new trial would be inconsistent with substantial justice. *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989), *aff'd*, 922 F.2d 184 (3d Cir. 1990).  Another reason for a new trial is where "the verdict is contrary to the great weight of the evidence." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735 (3d Cir. 1988).  In the latter case, a new trial is warranted only in those circumstances "where 'a miscarriage of justice would result if the verdict were to stand.'" *Olefins Trading*, 9 F.3d at 289 (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 211 (3d Cir. 1992)).  A new trial is never appropriate in cases involving only harmless error.  Fed. R. Civ. P. 61.  When reviewing a jury verdict, the District Court has an "obligation . . . to uphold the jury's award if there exists a reasonable basis to do so." *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir.1989).  When "reviewing a motion for a new trial, the court must draw all reasonable inferences in favor of the verdict winner." *Spencer v. Biggins*, No. 1:11-CV-01850, 2014 WL 1796606, at *2 (M.D. Pa. May 6, 2014) (citing *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984)).

      Plaintiff advances a series of claims regarding basic evidentiary rulings.  Where the issue under review is based on a matter such as an evidentiary ruling, the trial court's discretion is broad. *Klein v. Hollings*, 992 F.2d 1285, 1290-1289-90 (3d Cir. 1993).  In reviewing these claims, the court conducts a two-part inquiry: (1) whether an error was, in fact, committed; and (2) whether that error was so prejudicial that denial of a new trial would be "inconsistent with substantial justice." *Reynolds v. U. of Pennsylvania*, 747 F. Supp. 2d 522, 534 (E.D. Pa. 2010), *aff'd*, 483 Fed. Appx. 726 (3d Cir. 2012) (unpublished); *see also* Fed. R. Civ. P. 61 ("unless justice requires

5

otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granted a new trial).

## IV. LEGAL ANALYSIS

### A. Testimony Regarding Defendants Prior Military Service

Plaintiff argues that it was legal error for the court to allow testimony regarding the Defendants' respective military service prior to becoming corrections officers. Plaintiff further argues that it was error for the court to allow Defendant King to testify that during his armed service he was an Equal Opportunity Liaison in response to questioning as to whether he used racial slurs against Plaintiff.

Both Defendants testified at the trial. Defense counsel asked each Defendant to describe their background and employment history as an introduction to their testimony. Specifically, both Defendants testified that they had served in the armed services and received honorable discharges upon completion of that service. In addition, Defendant King testified that he had been an Equal Opportunity Liaison during his armed service, and Plaintiff argues that he should not have been permitted to so testify. Plaintiff argues that allowing such testimony was not relevant, was not described in the Defendants' proffer of testimony and was not pleaded as a defense. Defendants respond that the military service testimony was simply part of their employment history and offered by way of background information to introduce themselves to the jury. Further, Plaintiff testified that Officer King used racial slurs against him. King denied that he had done so and cited his duties as an Equal Opportunity Liaison to bolster his denial.

Federal Rule of Evidence 402 provides that relevant evidence is admissible unless any of the following provides otherwise: the United States constitution; a federal statute; the rules of evidence; the rules of evidence, or other rules prescribed by the Court. Federal Rule of Evidence

6

403 provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Plaintiff's argument is meritless. The employment background of the Defendants is relevant to the jury's assessment of credibility and it was not legal error to allow the Defendants to testify as to their employment history, including any military service. Additionally, it was not legal error to allow Officer King testify regarding his duties as an Equal Opportunity Liaison to bolster his denial of using racial slurs against Plaintiff, as it was relevant to assess the credibility of Plaintiff's claims. The testimony was not unfairly prejudicial, did not confuse the issues, did not mislead, cause undue delay, waste time or was not needlessly cumulative. The court finds that no error was committed in allowing this testimony. Further, even if it was error to allow the testimony, such error was not so prejudicial so as to require a new trial.

**B. Testimony Regarding the Department of Corrections' Excessive Force Policy**

Defendants filed a motion in limine to prevent Plaintiff from introducing evidence and argument that Defendants violated internal Department of Corrections' ("DOC") excessive force policy as evidence that excessive force as used on Plaintiff in violation of the Eighth Amendment of the United States Constitution. (ECF No. 69). The court granted the motion ruling that Plaintiff could not introduce evidence of a violation of internal policy because the violation of an internal policy does not give rise to a constitutional violation. (ECF No. 88). Therefore, any evidence or testimony concerning such a policy was excluded pursuant to Federal Rules of Evidence 401 and 402. *Id*. The court added that if Defendants testified that they followed the excessive force policy, such evidence would be admitted.

Plaintiff asserts that "throughout their testimony, Defendants' King and Orbash made countless references to the fact that their actions were justified because of Policy and Procedures as outlined by the Department of Corrections ("DOC"). Plaintiff in turn made many objections to these references to policy; grounds being "Defendants' own Motion." (ECF No. 116, p. 7).

Contrary to Plaintiff's description, Defendants did not attempt to use the DOC's excessive force policy as a defense. Plaintiff called inmate Patrick Davis as a witness. Davis testified that Defendant King did not serve a food tray to him on the morning in question. Plaintiff testified that he took his food aperture hostage to protest King's action of withholding Davis's food tray. Defendant King testified that Davis's food tray was withheld pursuant to a policy that requires inmates to show themselves in order to receive a tray. Therefore, Plaintiff opened the door to the mention of any policy by stating that Davis's food tray had been wrongfully withheld. Inmate Davis's testimony was presented by Plaintiff to explain why Plaintiff had taken his food aperture hostage that morning. The testimony regarding the policy that requires inmates show themselves in order to receive a food tray had nothing to do with whether Defendants had used excessive force against Plaintiff. At no point did any witness testify that Defendants' conduct in question violate any internal policies or procedures regarding the use of excessive force. The Defendants did not violate the Court's ruling regarding excluding evidence of DOC's use of force policy, and the court did not err in allowing testimony regarding the food tray distribution policy. Further, even it was error to allow the testimony, such error was not so prejudicial so as to require a new trial, as there was no testimony about any internal policy regarding excessive force.

### C.   Admission of Plaintiff's Exhibit B

Plaintiff next asserts that it was error for the court to admit his own exhibit, Plaintiff's Exhibit 2, a handheld video showing Plaintiff in Medical Triage after the incident. This exhibit

8

was also admitted as Defendants' Exhibit B. The video depicted Plaintiff undergoing a medical examination after the alleged excessive force. The video also contained audio in which Plaintiff exclaims that his arm was slammed in the feeding aperture several times, and that such action was in violation of DOC policy. Plaintiff argues that the excessive force policy should have been admitted into evidence to explain **Plaintiff's** own state of mind.

As plaintiff admits, neither party objected to the medical triage video. Further, to the extent that Plaintiff argues that evidence of the policy should have been admitted to explain Plaintiff's state of mind, Plaintiff's state of mind was not an issue in the trial. As explained *supra*, the court's omission of evidence of any excessive force policy was within the court's discretion pursuant to Federal Rules of Evidence 402 and 403 and it was not legal error for the court to exclude such evidence. Moreover, it was not error for the court to admit the medical examination video, as it was an exhibit introduced by Plaintiff himself and neither party objected to the introduction or admission of the video at any time. Lastly, Plaintiff's state of mind was not at issue in the case, and is not a valid reason for allowing any excessive force policy.

Plaintiff also takes issue with the answer the court gave to a jury question. During deliberations, the jury submitted a question to the court asking whether "there is a policy about an inmate's hands being out side of slot." (ECF No. 108). After hearing argument from the parties, the court responded as follows to the jury: "The jury is to decide this case based upon the evidence that was presented during the trial. The jury should not speculate whether there is a policy and if any, whether the defendants followed a policy." (ECF No. 109). Plaintiff also argues in his brief that the jury was really asking a question about procedure, not policy. (ECF No. 118, p. 12). Plaintiff never previously made this argument, and the court finds that the court's answer to the jury's question was not made in error.

Accordingly, the court finds that no error was committed in allowing Plaintiff's Exhibit B, introduced by Plaintiff himself, excluding evidence of DOC's excessive force policy or in responding to the jury's question. Further, even if any of these rulings were made in error, any conjectural error is not so prejudicial so as to require a new trial.

### D. Rebuttal testimony regarding Plaintiff's witness Davis

Plaintiff argues that the court erred when it allowed Defendants to present rebuttal testimony questioning Plaintiff's witness, Patrick Davis, about his ability to see the events transpire. Plaintiff called Patrick Davis, who was incarcerated and housed near Plaintiff. Mr. Davis, whose cell was beneath Plaintiff's cell, testified that he could not see directly into Plaintiff's cell from his own cell, but that he could see Plaintiff's cell in the reflection of a mirror across the cell block. He then testified as to what he heard and saw on the day in question. Defendant Orbash later testified as to what could and could not have been seen from the cell block mirror as rebuttal to Mr. Davis's testimony. Plaintiff objects that by allowing this testimony, Defendants were able to bring Mr. Davis's credibility into question, "creating an unfair/miscarriage of law in the presentation of Plaintiff's case." (ECF No. 116, p. 13). Defendant Orbash testified that he had been on the cell block in front of Mr. Davis's numerous times and that Plaintiff's cell could not be seen from the cell block mirror.

The jury is charged to judge the credibility of the witnesses and parties are allowed to cross examine and challenge that credibility of the other parties' witnesses. Having established a foundation for the question, this testimony was fair rebuttal testimony. The court finds that no error was committed in allowing this testimony. Further, even if it was error to allow the testimony, such error was not prejudicial so as to require a new trial.

### E. The court's ruling sustaining Defendants' objection to testimony regarding various forms of restrictive housing

Plaintiff argues that it was error for the court to sustain Defendants' objection when Plaintiff questioned witness Captain Price about the meanings of various forms of restricted housing, including the RHU, SRTU, and DTU. Plaintiff argues that the type of cell unit where the incident took place was relevant to the denial of Mr. Davis's food tray and Mr. Davis's state of mind.

This testimony had no relevancy to the issues of the case and testimony regarding those terms had already been presented to the jury; thus, the testimony was cumulative. Moreover, Mr. Davis's state of mind was not at issue in this case. The court finds there was no error in sustaining Defendants' objection to this testimony. Further, even if it was error to disallow the testimony, such error was not so prejudicial so as to require a new trial.

### F. The admission of Plaintiff's Exhibit 5 without certain redactions

Plaintiff argues that it was error for the court to admit an un-redacted version of a misconduct report which would omit any reference to him throwing items out of his cell aperture after the incident.

Plaintiff offered an un-redacted version of Exhibit 5, Misconduct B5611610, into evidence at trial which referenced him throwing items out of his cell aperture after the incident. This misconduct report, was also admitted as Defendants' Exhibit C. Plaintiff submitted this exhibit on his Pretrial Exhibit List as exhibit 1 (ECF No. 64-2). The exhibit was not submitted to the court with any redaction which Plaintiff is now requesting. The court held an initial pretrial conference on September 26, 2017 in which the parties' proposed exhibits were discussed. The court prepared the Plaintiff's Exhibit book for the jury based on discussions and rulings at that conference. The book included Exhibit 5 of which Plaintiff now objects. The court conducted the final pretrial conference on October 11, 2017, with Plaintiff in attendance by telephone conference. At this

conference, the court asked Mr. Talley whether he had received and reviewed his copy of the exhibit book. Plaintiff indicated that he had. In addition, the court inquired as to whether Mr. Talley had any objections to the exhibit and he stated that he did not. The exhibit was offered by Plaintiff at trial and admitted in trial as Plaintiff's Exhibit 5 and Defendants' Exhibit C.

Plaintiff now claims that he requested a redaction to Exhibit 5 at the Pretrial Conference; however, this redaction was never requested or submitted to the court for consideration. Even had Plaintiff requested the redaction, the court would have found that the evidence was relevant and would have denied Plaintiff's request after considering the factors in Federal Rule of Civil Procedure 403. Further, Plaintiff did not object to these same actions that were shown in the Pod video which was introduced by Plaintiff.

There was no error in the court admitting the exhibit un-redacted. Further, even if it was error to submit an un-redacted version of the exhibit, such error was not so prejudicial so as to require a new trial as the jury heard testimony regarding the misconduct and viewed Plaintiff throwing objects as depicted in the Pod video which was admitted by Plaintiff.

### G. The court's instruction to the jury on Defendants' immunity affirmative defense to Plaintiff's assault and battery claim against Defendant King

Plaintiff argues that the Court erred in instructing the jury on the affirmative defense of qualified immunity to Plaintiff's assault and battery claim against Officer King. On August 29, 2017, Defendants' filed their proposed jury instructions and on September 6, 2017, Plaintiff filed his proposed jury instructions. (ECF Nos. 77 and 81). Plaintiff objected to Defendants' proposed modification to include an instruction regarding whether Defendant King was acting within the scope of his employment with the DOC. (ECF No. 95, p. 2). The court denied the Plaintiff's objection ruling that the jury had to make a finding of fact as to whether Defendant King was

acting in the scope of his employment in order to determine whether he was entitled to qualified immunity.

Plaintiff argues that because the court denied Defendants' motion for summary judgment on the assault and battery claim against King, the issue of qualified immunity should not have been submitted to the jury. Plaintiff misconstrues the court's ruling. The court ruled that, based upon the facts viewed in the light most favorable to Plaintiff, whether Defendant King acted in the scope of his employment was an issue of fact for the jury to decide. (ECF No. 47 at 7-8). There was sufficient evidence of record for the jury to conclude, as they did, that Defendant King was acting within the scope of his employment during the incident. (ECF No. 110). There was no error in submitting the issue to the jury or the given instruction.

### H. The court's ruling excluding testimony of Plaintiff's proposed witness Tonio Rosario

Plaintiff argues that the court's exclusion of his proposed witness Tonio Rosario as cumulative was in error. Plaintiff listed former inmate Tonio Rosario on his witness list filed July 10, 2017. (ECF No. 53). He described Mr. Rosario as a prisoner detained at SCI-Greene on the date of the incident. He proffered that Mr. Rosario's cell was directly across the pod from Plaintiff's cell and that Mr. Rosario witnessed the incident on September 16, 2017. On September 12, 2017, the court issued the following order:

> TEXT ORDER - Plaintiff identified Tonio Rosario as a trial witness. (ECF No. 53 ). Defendants have informed the Court that Tonio Rosario was released from DOC custody in July of 2017 and, therefore, is no longer in the control of the DOC. (ECF No. 65 ). Should Plaintiff desire to call Mr. Rosario as a witness at trial, it may be necessary for Plaintiff to subpoena him. Plaintiff is advised that pursuant to Fed.R.Civ.P. 45(b)(1), he is responsible for service of the subpoena on Mr. Rosario as well as payment to the witness of the appropriate witness attendance fee(s) ($40 per day for each day's attendance pursuant to 28 U.S.C. section 1821(b)), and the mileage allowed by law. Signed by Magistrate Judge Cynthia Reed Eddy on

> 09/12/2017. Text-only entry; no PDF document will issue. This text-
> only entry constitutes the Order of the Court or Notice on the matter.

(ECF No. 84).

During the Pretrial telephone conference on September 26, 2017, Plaintiff informed the court that he did not know Mr. Rosario's address. Pursuant to court order, Defendants provided the address to the court under seal, which the court provided to Plaintiff. By the time of the Final Pretrial Conference on October 11, 2017, Plaintiff had still not made arrangements to subpoena Mr. Rosario and requested that the Marshals do so on his behalf and advance the witness fee. The Court denied this request and stated that in any event, Mr. Rosairo's testimony would be cumulative of the testimony of Plaintiff, Davis and both Defendants, based upon Mr. Rosarios's affidavit submitted by Plaintiff at ECF No. 7-3. The affidavit states that Mr. Rosario witnessed the denial of the tray to Mr. Davis and that Officer King slammed Plaintiff's arm in the food aperture for about ten seconds. The court's exclusion of this witness as cumulative was not in error and does not warrant a new trial. Mr. Rosario's proposed testimony – as evidenced by his affidavit – was not vital to Plaintiff's case, as Plaintiff was permitted to present his version of the events to the jury and was able to call Mr. Davis – the inmate who was denied a tray – as a witness to present his version of events. The court also notes that Mr. Rosario's address is outside of the 100 mile subpoena limit as set forth in Federal Rule of Civil Procedure 45(c)(1)(A). Accordingly, the court's exclusion of Mr. Rosario as a witness was not legal error, and even if it was error to disallow his testimony, such error was not so prejudicial so as to require a new trial.

## V. CONCLUSION

Based upon the foregoing, the court cannot conclude that the verdict in this case was against the weight of the evidence or that errors at trial produced a result inconsistent with substantial justice. Moreover, Plaintiff's request to file a supplement to his motion in the event that the court

14

does not grant his motion is also denied, as such supplementation would be futile.  Accordingly, a new trial is not warranted and plaintiff's motion is denied.

      An appropriate Order follows.


Dated:  January 4, 2018.

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:    Quintez Talley
       KT 5091
       SCI Graterford
       P.O. Box 244
       Graterford, PA 19426-0244
       (via U.S. First Class Mail)

       Timothy Mazzocca
       Office of Attorney General
       (via ECF electronic notification)